Good morning. We're delighted to be here. I said this on Tuesday. I will say it again. We're delighted to be on your beautiful island and to hear the cases on which I know you've worked so hard. We will start by hearing argument in Governor of Virgin Islands v. Motta. Mr. Chancellor. Good morning, Your Honours. May it please the Court, my name is Eric Chancellor and I represent the defendant, in this case, appellant David Motta. As Your Honours know from reading the materials, this case involved a conviction for robbery and attempted rape that occurred in the Mary's Francie area of St. Croix, which is around the middle of the island. Do you wish to reserve rebuttal time? Oh, I'm sorry. Possibly two minutes would be fine. Right. Thank you. Yes, so it involved a robbery and attempted rape by two individuals in the Mary's Francie area of St. Croix. My client was accused by the victim of being one of those individuals. My client's defense at the trial was an alibi defense that at the same time this robbery and attempted rape was occurring in Mary's Francie, which is somewhat close to the middle of the island, he was at another end of the island taking parts off of a junk car to fix another car that he was driving, he and two other persons. We presented at trial the testimony of three people, four including my client, to say that he was in Frederickstead taking parts out of a junk car at the time this robbery and attempted rape was occurring. The government presented the testimony of one Miss Horsefoot who worked in a daycare center right next to the property where my client was taking the parts off of the car. The issue here is whether or not the judge abused his discretion in disallowing us from presenting testimony that would have contradicted what Miss Horsefoot testified to at trial. The testimony that we sought to introduce was the testimony of attorney Renee Dowling. She was the attorney for one of the co-defendants who was tried separately. As part of her investigation, she interviewed Miss Horsefoot. She wrote notes on what Miss Horsefoot told her. When it came to trial, however, Miss Horsefoot testified differently from what she had told attorney Dowling earlier. Of course, Miss Horsefoot testified consistently with the way she had testified at Alan Mata's trial and testified consistently with – as to the relevant issues of impeachment here – consistent with how Miss Urgent had testified. But what she did say, narrowing your argument down to the two areas in which you wished to examine or wished to examine Miss Dowling, was the color of the car, which Miss Dowling would say that Horsefoot said was blue, and the time frame of when the men left the scene, correct? That is correct. Those are the two essential matters that we sought to introduce attorney Dowling's testimony on. Now, you're correct. She did testify consistently with respect to the color of the car in the prior case with Alan Mata. And consistently, the statement she gave to Detective Silva also said the car was white. This is correct. Now, interestingly enough, we provided, as Your Honors requested, the transcript of her testimony from Alan Mata's trial. And as you can see, attorney Dowling attempted to get her back on the stand after she had looked over her notes to impeach her on what she said with regard to the color of the car and the timeline. For whatever reason, she failed in that effort. In the Alan Mata trial. In the Alan Mata trial. She failed in that effort, and she simply seemed to give up after there was some resistance to her putting on that evidence again. And I can't phantom why from reading the transcript, but it's clear that she attempted to do so, but for whatever reason, was thwarted in her attempt. We came back at the trial with that same information, and we asked the same questions. And we sought to then bring in attorney Dowling to say exactly what Ms. Horsford told her. Horsford said she didn't say blue car, and Horsford said she didn't say, you know, long time before 1230. And it would have been permissible, Your Honor, for us to come in through contradiction and say, yes, you did say that. And that's your argument here. Correct. That's your argument. Correct. And you say that this would have been very important to you. It would have been very important because this totally blows our alibi defense out of the water. She is the only one who – Well, so does Ms. Urgent. So does the victim. Well, you know – Because she identifies – And I thought it was clear that her identification was somewhat suspect because she had ample opportunity on quite a few occasions to identify him, and she did not. She did not. She testified to being at a gas station where she identified Alan Mota, his brother. We had testimony that he was there at the scene. He was there. But there is no testimony that she saw him there or that, more correctly, that he was able to be seen by her when she was there. Correct? She didn't – right. She didn't say that. He, of course, said that I was right in front of her. But she didn't say – she said she didn't see him. She did admit – she said on at least two occasions she's driving by on a bus and she sees him there. But yet she fails to do whatever it takes to get the police out there and say, this is the guy. Arrest him. Talk to me about the mug book because that, I think, is a very interesting piece of evidence. As I understand – I'm sorry. The mug book? The mug shot book? Oh, yes, yes, yes, yes. She – wait. She looked at – right after it happened, she looked at the book of mug shots. Correct. And as I remember the record, there were four to a page. And she looked at – and on pages 215 and 224 she said, it looks like them. Correct. But I'm not sure because the hair is different. Now that, to me, is quite remarkable identification testimony out of what presumably are hundreds of mug shots. She picks the two brothers. Well, she picks two people who look alike. And – Turns out to be – And they turn out to be brothers. They look alike. How many people in that book looked alike, we don't know. We know there was a – But she didn't pick them out, I guess, because they did look alike. But she had testified at the time that the two – the perpetrators looked alike. Correct. And she found these two men. Two light-skinned men who looked alike. Yeah. Of course, she had already identified – she would come to identify Alan Mota anyway. Correct. But that's pretty important testimony, isn't it? It's interesting testimony. And you go on and she's also asked about some features that he had. These pictures were taken just two days after the incident. And yet, she admits that in the picture of David Mota, my client, here he has a little goatee and he has a mustache. He didn't have those things on that day, she testified. Neither of the individuals. My client does not have a tattoo. And she testified that the guy she identified as David Mota, my client, had a tattoo, which she clearly saw on his arms. She also went on to pick another individual who looked like him or could have looked like him. And in fact, the police officer said, yeah, this guy frequents that area. I know that. Okay? So that and the fact that she had other opportunities where she saw him but didn't take any reasonable efforts to get this guy arrested before then. She even saw him at what we call the juve, which is a kind of party they have in Carnival in early morning. And at that time, she claimed he fired a kiss at her and she went up to him and slapped him. Mr. Chancellor, if we agree with you that this was error not to allow the attorney to testify. Correct. That if we had been trying the case, we would have allowed him to testify to the discrepancy as to the car. And what's your best argument for saying that that error was not harmless error since the government has not argued that if it was error, it was harmless error. They have not brought that up in their brief at all. That's correct. So, I mean, it appears to be conceded. I would say conceded. But what's your best argument for the appellant that this error could not be harmless error even if we had determined that attorney should have been allowed to testify? Well, it is critical because we have a couple of things. Three young men down in Frederic State. We know that my client was one of those young men in Frederic State. We have testimony. You're talking about the testifying as to the alibi. Correct. Three young men in Frederic State. Victim says there were two young men in Mary's Fancy. Okay? Victim says the young men were driving a white car. Everybody – well, my client says it was a blue car in Frederic State. The other person who was there with them, a friend, Roberto Rivera, testified that it was a blue car because it was his mother's car. His mother came in and testified, I gave them my car that morning to go get that parts to fix it. They were driving my car. All right? We also had the owner of the property where the abandoned car was, Leila Padilla, who came in and testified, yeah, they came there and they were driving. And I don't think she recalled exactly what color the car was. But they were there. They were driving. So, yes, it is very important, and it wouldn't be harmless because those young men only had one car that morning. So your argument is that this is a closed case and we cannot be – and it's not highly probable that this did not have – would not have made a difference in the verdict? Well, it is a closed case and – But from an ID purpose, from an identification purpose, the standard of review on harmless areas, are we highly – are we satisfied that highly – it's highly probable that this did not have any influence upon the verdict? I don't think you could say that, Your Honor. I don't think you could say that because I think if the testimony came in that these guys were driving a blue car, and given the – what the victim says about the identification, she didn't positively identify them the first time. You already had – you already had the victim and Horsford's testimony about the whole – the victim testified about the whole incident. And Horsford testified about that whole morning and the alibi. And you've got the defense case coming in, the car was blue, and you have the government witnesses saying it was white. If the government's witnesses testified, as the jury clearly found, credibly, why do you not believe them? Why should it not be – they should not be believed that the car was white? Because – Because this really was a credibility call, wasn't it? Right, because the one witness said before she came in to testify that it was actually blue. She also got the time wrong, though. She also got the time wrong. And the jury didn't find that material enough. I mean if the jury had found Horsford's inexactitude or incorrectness with respect to the time to be meaningful, then you win on your alibi. Well, it wasn't exactly that case. She didn't exactly – she didn't get it so far wrong from what she said. That's why the impeachment on that issue would not have been that material because it wasn't that far wrong even if Ms. Dowling testified. Well, Ms. Dowling would have testified that she said much earlier than 12.30. In her statement she gave to the police, she said 12.30. At trial, she said about 1.30 they came back. Ms. Dowling would have said, no, she told me it was earlier than that. But that's – how would that – And then we had other – The rape occurred – the alleged rape – the attempted rape occurred between 10 o'clock and 12 o'clock. Correct. So would a half an hour at one end of that time period make that much of a difference? Well, when we're talking about the distances we're talking about and what they had to do during that period, yes, it would. We'll get you back on rebuttal unless there are any further questions now. Thank you. All right, Ms. Robinson, I think you're going to earn your salary this week, aren't you? Yes, Your Honor. Well, welcome back. Thank you. Good morning. If it pleases the Court, my name is Tiffany Robinson. I represent the people of the Virgin Islands, and we would request that you affirm the decision of the appellate division. And the appellant, as he stated, was attempting to use Attorney Dowling's testimony to impeach Ms. Hartford as to the description of the car and also to the timeline. Well, why shouldn't he have been allowed to use Attorney Dowling since her identification of the defendant was not ironclad by any means? It was iffy to some extent. And how could we be sure that if Dowling had testified, it would have made a difference? Well, I would submit that – I'm sorry, are you saying with respect to the description of the car or the description? Yeah. Because her ID of the man, he's got a lot of ammunition saying that the identification is anything but solid. Yes. Attorney Dowling would only offer evidence to say that it was blue rather than white, and other witnesses have vouched for – other witnesses' testimony was consistent with the testimony of Ms. Horsford. And she had stated in the police report that the color of the car was white. And the color of – and during her testimony at the appellant's trial, she stated that the color of the car was white. And so the jury would just be in the position of determining whether or not they believed the witness, Ms. Horsford. And given that there was other testimony that the vehicle was white, the jury was just balancing whether or not they were telling the truth. Well, yeah, but she's a crucial witness. She's, if not the star witness, in some ways even more so than the victim. And here you have evidence that would have been 180 degrees contrary to what she had testified to. Yes, Your Honor. And I would submit, as the Court stated during oral argument a few moments ago, that the inconsistencies as to the timeline was – Attorney Dowling's testimony with respect to the timeline would not – would have been cumulative of the statement in the police report. In the police report, she stated that the appellant and his brother and the third person arrived approximately at 1232 minutes to 1. And because the witness, Celestina Horsford, was contradicted during cross-examination with that evidence, I would submit that Attorney Dowling's testimony with respect to the timeline would not be – would just be cumulative. All right, but that covers you on the timeline, but that doesn't help you with respect to the color of the car. That would not have been cumulative. And she was asked on direct – she was asked by, I guess, on cross, didn't you tell Ms. Dowling that the car was blue? And she said no, right? Yes. So she wasn't waffling on the stand. She said, I said it was white. So the question becomes, should Dowling have been permitted to testify that she said the car was blue? Speaking only for myself, I would have let her testify that the car was blue and let the jury, you know, decide – well, Dowling probably got her confused with a modern trial or what the boys were saying or something. But, you know, it would have been easier to just let her say, you know, I didn't say that and let Dowling say, no, she said it was blue. But the real issue in my view is if – even if it was error, it's your burden to prove that the error was harmless. And tell us why any error was harmless here. The trial court did not allow Attorney Dowling to testify as to the color of the car to impeach the testimony of Celestina Hawksford. In evidence, at trial, she was contradicted with the police report. You're talking about cumulative impeachment evidence. I'm sorry. I'm talking about – I want you to tell me why we should affirm this conviction. What is the evidence that you can say to me any error here was harmless given the evidence in this case against the appellant? I would submit that Kim Urgent, the victim, identified the appellant, albeit she hesitated during the photo array. She identified them on the pages that the court indicated, but she hesitated because the hairstyles were different, although she did subsequently in court identify David Mata. Celestina Hawksford identified the times when she believed that the appellant was at the Campo Rico lot, which was approximately 1230 to anywhere between 130. And although I don't know the distance between Estate Mary's Fancy and Campo Rico, the rape would have occurred between the hours of 10 to 2, and I'm not sure that that timeframe of half an hour between 12 and 1230 – I think it was 10 to 12. 10 to 12, yes, Your Honor. And even if the appellant did arrive at Campo Rico lot at 1230, I'm not sure that that's enough of an alibi to say that he could not have been at Estate Mary's Fancy to have assaulted the victim, Mary Urgent. And I would submit that the jury was able to examine the credibility of the appellant and the credibility of Ms. Hawksford as well as Ms. Urgent, and I think that it was substantive evidence that supported the government's position that he had committed the charges for which he – Look, at the trial level, they did not allow Dowling to testify based on it was too much confusion. The judge put it on a Federal Rule of Evidence 403, I guess you would say, balancing. It was too much confusion, right? Yes, Your Honor. You don't argue – as a matter of fact, I think you've given that up in your brief. You've never argued that Dowling testify would have made it confusing. You never mentioned that in your brief. No, I didn't, Your Honor. All right. So have you abandoned that, your position? No, I wouldn't abandon it. You're going to argue it now and you didn't brief it? I wouldn't argue it. Excuse me. I'm sorry. You didn't brief it. How could your adversary meet it if you never briefed it? I'm sorry. As far as I'm concerned, you abandoned the 403 argument, and that was the only argument that the district court bought which ruled out this testimony. That was the only argument offered. I would submit that the appellate division also looked at whether or not the – Well, I'm talking about the trial level. At the trial level. I mean, on an appellate level, we, as well as the appellate division, are supposed to review the trial record, not go off-counsel to the government or a defense attorney. And I'm saying on this record, as I read the record, and it's very clear, the only application for ruling out Dowling was confusion. There was also the trial court, didn't they? The judge was very concerned about the attorney-client privilege being breached. But you have not – you've abandoned that in your brief. You never argued it. Your Honor, I never argued confusion of the issues. Essentially, by reading the courts – So if you didn't argue that, 403, to uphold the trial judge's determination to rule out Dowling, and we determined that this evidence would have been – was not cumulative, but it dealt with a different subject than what she was actually cross-examined with, why would that be harmless error? I would submit that the trial court did focus on whether or not it was cumulative. It didn't just focus on whether or not it was a confusion of the issues. It can't be cumulative. It may be cumulative in that it was also impeachment evidence, but it dealt with a different subject that they were impeaching her with. So it's not cumulative. It's a different subject that the jury would have seen that this witness was mistaken in her testimony. And if they got to her, given the fact that the actual identification of the defendant is not solid, why could this court be highly probable that ruling out Dowling's testimony made no difference in the verdict of this jury? I would submit, for the reasons I stated earlier – Well, submit them again because they didn't register with me. I'm sorry. Yes, Your Honor. I would submit that the jury had a lot of information before them. They had the testimony of Kim Urgent, which stated that the vehicle was white. Although the attorney Dowling's testimony would have focused on the impeachment of Celestina Horsford, I would submit the jury would have to balance the credibility of all the witnesses presented, and it's just a matter of believing one witness over another. And I don't believe that it's highly prejudicial to view the evidence such that if one witness does not contradict another witness, that on one fact, which was found consistent by the testimony of other witnesses, that it would have changed the matter in this – it would have changed the outcome in this case. I don't believe that the defendant would have been – I thought that's what trials are all about, who's mistaken and who's not mistaken. Absolutely, Your Honor. And, of course, it's for the fact finder to determine whether or not they believe one party over another. And based upon the jury's evaluation of the other inconsistent testimony of Celestina Horsford, they chose to believe her. They didn't – they had other evidence that showed that she was inconsistent in some circumstances. Incidentally, in your brief, in addition to – I'll say you abandoned any 403 reasoning that the trial judge used for ruling out Dowling's testimony. You never argued that even if this was error, it was harmless error. You've never argued that in your brief. No, I did not argue that, Your Honor. Why not? I just – I was going through the analysis of whether or not – I just assumed that if it wasn't prejudicial, it's harmless. And if it did not have an overall impact on the court's ruling given the substance of evidence submitted at trial, that I wouldn't have to analyze the case in that way. Well, if you didn't argue – Is it waived? I'm sorry. I mean, I'm sorry, but that's my – we're asking the same question. Is it waived? I mean, it wasn't raised in the least in your brief. No, it wasn't raised, Your Honor. I mean, clearly the timeline – you have a good argument, at least as far as I see it, that that's cumulative because she told the police it was 1230. She testified at trial it was 120 or 130. There's a contradiction there. Defense counsel made some hay out of that. The color of the car, that's not cumulative because there were no other statements given by this witness either in the prior mode of trial or in the police interviews that the car was blue. There's no evidence at all in this record that the car was blue. So I don't know how you argue that that's cumulative. That would have been a new piece of probative information. It seems to me that the rubber meets the road in asking whether that would have mattered here. And you've got a victim who testified in a way that the jury found persuasive. And I think a good argument could be made that whatever Horsford's inconsistencies were and are, they would not have mattered because the jury was relying upon this very lucid, accurate, fairly detailed testimony of the victim. I understand that to be your best argument, but I also understand that to be an argument that's never been made before us. So what are we to do with that? Well, in ruling on whether or not the error was prejudicial, if the court determines that the error was not prejudicial, I don't think that the court is going to- Well, how do we rule? I suppose we determine how do we reach whether the error was harmless when you didn't brief it. And if you didn't brief it, I don't expect your friend across the aisle to brief it because he's not going to bring up something for the first time against himself. As I read the briefs of this, the only thing you had going into this is your defense of a 403 balancing test by the trial judge. You abandoned that. You never claimed that even if there was error, it was harmless. So on this record, if we determine, number one, that it was a 403 inappropriate ruling, don't we have to reverse it? And even going beyond that, if we were a liberal bench of my sister and brother, liberal activist judges, and said we wanted to look beyond the immediate briefing and determine that this was error aside from the 403, how can we go into a harmless error balancing when you didn't argue it and certainly the appellant didn't have the opportunity to refute it in his briefing? I would submit that if the court doesn't find that it's prejudicial, I'm not sure that the court would be required to reverse it even if I didn't argue that it was a harmless error. Let me ask you this question. I'm going to give you one right over the plate in honor of the New York Mets. Now, you hit this one out of the park, and let's see where we go with that. You were so sure that you were correct, that the position you were articulating was correct, that you saw no need. You couldn't believe that anyone would find to the contrary, right? So you saw no need to even argue harmless error because you didn't see any error. The answer to that is yes. Yes? Yes, Your Honor. Maybe it's true. Yes. Yes. Okay. And this morning, Mr. Chancellor gets up, and he argues harmless error. I'm suggesting maybe he opened the door for you to now say to me, when I ask you this question, Ms. Robinson, is it your position that even if error was committed here, the error was harmless? The answer is yes. Yes, Your Honor. Thank you. That's all I have. Nothing further, unless the court has any other questions for me. Mr. Chancellor, we'll hear you in rebuttal. Well, I just want to add, Your Honor, that I argued harmless error after the court brought it up. No, this is in the fact that you didn't bring it up in your brief. There was no harmless error. I asked you the question from a bench. Correct. All right. It was that hard. So if we are activists, judges, we're going to go beyond the record. Right, but which we shouldn't do in this case, Your Honor. But the record itself is that Dowling was thrown out of court on a 403 balancing test. That's true, and what it came down to was cumulative, is what was argued. Cumulative impeachment evidence. That's something I had – it took me a long time to figure out that that was really the issue. In other words, that Horstfeld had already been – the government's position was the trial court correctly excluded Dowling's testimony as cumulative impeachment evidence because other impeachment evidence challenged Horstfeld's recollection of the timeline and the description of the car. So we're talking cumulative impeachment evidence. I don't see a lot of prior impeachment evidence, if any, of Ms. Horstfeld such that this would be cumulative. Correct, and she was never asked about the – she never testified. There was never any impeachment evidence about the car before. Except that she was asked. She was asked, did you tell Dowling that the car was blue? And she said no. Exactly. I told her it was white. So Dowling would come on, and they would say – maybe a couple questions for foundation. Did Ms. Horstfeld tell you the car was blue? And the answer would be yes, and that's it. Call here for a reversal. Well, she would also talk about the timeline, which, again, given the distances we're talking about, would have been significant. Also, Your Honor, we're not disputing what the victim says, that two guys drove up, parked in front of her car in a white car. She's correct. Her assailants were driving a white car. We're just saying on that day, on that morning, my client was in a blue car. Well, did the victim point the finger at your client? I mean, that's pretty solid testimony. Do you have any case law or argument as to why the government has waived the harmless error argument? I believe that they simply went along with what the judge said in that case, that the evidence was cumulative, and therefore – and I think the government just picked up the argument. But is it your position that not having raised the argument in its brief that the government – that we cannot decide the case on harmless error? Of course. This is not a liberal activist court, as I understand it. Well, we can actually decide in any way we want. We could be wrong, but we can decide it. I mean, without putting labels on us, I mean, I – you know, it's a serious issue. Yeah, I mean, maybe we need some supplemental briefing on that. I would like it. I mean, the general rule before our court is that issues that are not raised are waived. I mean, that's the general rule. I'm just curious, as a relatively newer member of the court, whether there is some different application in the harmless error context. I'm not aware of one. I'm not aware of one either. I doubt I could find any. Would you like the opportunity to submit a brief on it? I mean, I wouldn't need one. I mean, I can do my homework myself, but I usually like seeing what the lawyers have to say first. And then we'll send you an order if we want a briefing. We'll send you an order. Meanwhile, we will – if we want additional briefing, we will advise you. Meanwhile, we will take the case under advisement. It was very, very well argued. Thank you very much. Thank you very much.